**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

```
LINDA D. COURTNEY,            *
                             *
     Plaintiff,              *
                             *
vs.                          *   CIVIL ACTION NO. 20-00310-B
                             *
KILOLO KIJAKAZI,             *
Acting Commissioner of       *
Social Security,             *
                             *
     Defendant.              *
```

## ORDER

Plaintiff Linda D. Courtney ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. On April 5, 2021, the parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this case. (Doc. 16). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 17). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   <u>**Procedural History**</u>[1]

Plaintiff applied for benefits and alleged disability beginning July 3, 2015, based on sciatica in her lower back. (Doc. 11 at 128, 142). Plaintiff's application was denied at the initial stage. (<u>Id.</u> at 62). Upon Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on April 4, 2019. (<u>Id.</u> at 39, 71). Plaintiff, who was represented by counsel, attended the hearing in person and provided testimony related to her claims. (<u>Id.</u> at 41-50). A vocational expert ("VE") also testified at the hearing. (<u>Id.</u> at 50-53). On July 12, 2019, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (<u>Id.</u> at 19-33). The Appeals Council denied Plaintiff's request for review on May 5, 2020; therefore, the ALJ's decision became the final decision of the Commissioner. (<u>Id.</u> at 5).

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on April 29, 2021 (Doc. 22), and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

II.  <u>**Issues on Appeal**</u>

1. **Whether substantial evidence supports the ALJ's finding that Plaintiff has the residual functional capacity to perform the full range of medium work?**

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

> **2. Whether the ALJ violated SSR 16-3p and reversibly erred in finding no severe impairments at step two, when the ALJ alternatively found at step two that Plaintiff's medically determinable impairments are severe and completed a full sequential evaluation based on that alternative finding?**

## III. Factual Background

Plaintiff was forty years old at the time of her administrative hearing in April 2019. (Doc. 11 at 42, 128). Plaintiff is 4'11, weighs 175 pounds, and has been diagnosed with morbid obesity. (Id. at 42-43, 296). Plaintiff has worked as a car detailer and, more recently, as a kitchen helper at various fast-food restaurants. (Id. at 43, 51, 171-75). She testified that she last worked at a fast-food restaurant on July 1, 2015 but had to quit because her "back went totally out." (Id. at 43). Plaintiff attended special education classes and graduated from high school with a "Certificate of Education." (Id. at 42, 143, 204-05).

According to Plaintiff, she is unable to work because of lower back pain that is constant and ten on a scale of ten in severity. (Id. at 44-45). Plaintiff's lower back has been treated with injections and medication such as Tramadol and Meloxicam. (See id. at 46, 50, 227, 274, 281, 291-92, 296, 307, 311-12, 315). The record reflects that Plaintiff has a history of hypertension, which is well-controlled on medication, a history of hyperlipidemia, for

which she is also on medication, and is prediabetic.  (See id. at 266, 270, 296).

**IV.  Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[2]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991).  "Substantial evidence is more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  In determining whether substantial evidence exists, a reviewing court must consider the record as a whole, taking into account evidence both favorable and unfavorable to the Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th

---

[2] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Cir. 1986) (per curiam); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, at *4 (S.D. Ala. June 14, 1999).

**V.    <u>Statutory and Regulatory Framework</u>**

An individual who applies for Social Security disability benefits must prove her disability.  <u>See</u> 20 C.F.R. § 404.1512. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); <u>see also</u> 20 C.F.R. § 404.1505(a).  The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven her disability.  <u>See</u> 20 C.F.R. § 404.1520.

Under this process, the claimant must first prove that she has not engaged in substantial gainful activity during the relevant period.  <u>Carpenter v. Comm'r of Soc. Sec.</u>, 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam).[3]  The second step requires the claimant to prove that she has a severe impairment or combination of impairments.  <u>Id.</u>  If, at the third step, the claimant proves

---

[3] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority.  11th Cir. R. 36-2; <u>Henry v. Comm'r of Soc. Sec.</u>, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

that her impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  Id.

If the claimant cannot prevail at the third step, the evaluation proceeds to step four, where the claimant must prove an inability to perform her past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC").  See Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite her impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

If the claimant meets her burden at the fourth step, the burden temporarily shifts to the Commissioner to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment that exists in significant numbers in the national economy given the claimant's RFC, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the burden then shifts back to the claimant to prove her inability to perform those jobs in order to be found disabled.  Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1279 (11th Cir. 2020).

**VI.  <u>The ALJ's Findings</u>**

In this case, the ALJ found at step one of the sequential evaluation process that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 3, 2015. (Doc. 11 at 21).  At step two, the ALJ found that Plaintiff does not have a severe impairment or combination of impairments.  (<u>Id.</u> at 21-27).

Although the finding of no severe impairment at step two would result in a determination that Plaintiff is not disabled, the ALJ found in the alternative that Plaintiff's medically determinable impairments of "Spine Impairment (including 'sciatica' and degenerative disc disease), Degenerative Joint Disease (including knee osteoarthritis), Chronic Pain Syndrome, Obesity, and Hypertension" are severe impairments, and he proceeded with the remaining steps of the sequential evaluation process based on that alternative finding.  (<u>Id.</u> at 27).  At step three, the ALJ found that Plaintiff's impairments, when considered individually and in combination, do not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (<u>Id.</u> at 27-28).  The ALJ then found that Plaintiff has the RFC to perform the full range of medium work.  (<u>Id.</u> at 28-31).  Utilizing the testimony of the VE, the ALJ determined at step four that Plaintiff is able to perform her past relevant work as a kitchen helper, as

the job is generally performed in the national economy. (Id. at 31).

Although the ALJ's step four finding would result in a determination that Plaintiff is not disabled, the ALJ proceeded to make alternative findings at step five. The ALJ considered Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines,[4] and he concluded that "a finding of 'not disabled' is directed by Medical-Vocational Rule 203.28." (Id. at 31-32). The ALJ then stated that "[a]lthough additional evidence is not necessary to reach a finding of 'not disabled' here, it also bears noting that the VE testimony further supports this 'step five' finding." (Id. at 32). The ALJ cited the VE's testimony that, based on Plaintiff's age, education, and work experience, and a hypothetical RFC more restrictive than the full range of medium work, Plaintiff remained capable of performing other jobs that exist in significant numbers in the national economy, such as hand packager, janitor, and garment sorter. (Id.). The ALJ stated that "even if [Plaintiff's]

---

[4] The Medical-Vocational Guidelines, or Grids, "are a series of matrices which correlate to a set of variables — the claimant's residual functional capacity, age, education, background, and previous work experience — and can be used, at step five, to determine whether claimant has the ability to adjust to other work in the national economy." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 n.4 (11th Cir. 2010) (per curiam). "On entry of these variables into their appropriate matrix, a determination of disabled or not disabled is rendered." Id.

impairments were 'severe' rather than 'nonsevere', and even if she
could not return to her [past relevant work], and even if her RFC
would not allow for a direct application of the Medical-Vocational
rules, the record would still warrant a finding of 'not disabled'
in this case." (Id.).  Thus, the ALJ concluded that Plaintiff is
not disabled.  (Id.).

**VII.** **The Medical Evidence**

     The record reflects that Plaintiff presented to Springhill
Medical Center's emergency department on July 2, 2015 and reported
that her "back went out" three days prior while performing heavy
lifting at work.   (Id. at 226).   On examination, Plaintiff
exhibited tenderness to palpation of the left lumbar musculature
extending along the sciatic distribution, but the distal motor
sensory function of her left lower extremity was intact. (Id. at
227).  Plaintiff received injections of Decadron and Dilaudid and
prescriptions for Meloxicam, Cyclobenzaprine, and Acetaminophen-
Hydrocodone, and she was discharged.  (Id. at 227-28).

     Plaintiff underwent a consultative medical examination with
Stephen B. Chromiak, M.D. on September 8, 2015.  (Id. at 229-34).
On examination, Plaintiff's lumbar spine was markedly tender; her
lumbar range of motion was limited; she had a mild limp with no
tremor or ataxia; her reflexes and light touch sensation were
intact; her hand grips and dexterity were intact; her motor
strength was +5/5 except for in the bilateral hip flexors, which

9

were +4-5/5 but gave out immediately at the thought of resisting; her sitting straight leg raise was negative bilaterally; she was unable to lie flat on the exam table for a supine straight leg raise test; she was unable to squat; she was unable to stand on either foot or on her heels and toes; she was unable to tandem walk, heel walk, or toe walk; and she was able to step up and down from the exam table while holding onto it.   (Id. at 232).   Dr. Chromiak stated that an x-ray had been ordered, and that Plaintiff did "not have a diagnosis yet, although the course sounds like a herniated lumbar disc."   (Id. at 233).   He opined that Plaintiff was "obviously unable to do her standing, heavy lifting job for the indefinite future, possibly permanently."   (Id.).   However, a consultative lumbar spine x-ray performed that day revealed "[n]o significant radiographic abnormality" in Plaintiff's lumbar spine. (Id. at 234).

Although Dr. Chromiak opined that Plaintiff "needs orthopedic evaluation for diagnosis and prognosis" (id. at 233), the record reflects no further treatment in 2015 and only primary care treatment in 2016 and 2017.   Plaintiff's progress notes from five primary care visits between January 2016 and July 2017 reflect no musculoskeletal complaints or related treatment (including medications), and relevant physical examination findings during those visits were normal, including normal range of motion, no apparent distress, and no clubbing, cyanosis, or edema.   (See id.

at 242-55).

At an August 18, 2017 primary care visit to Bryan Crenshaw, M.D., Plaintiff reported that she had experienced lower back pain for the past nineteen years. (Id. at 240).  In contrast to her earlier reports of a work-related lifting injury, Plaintiff denied any precipitating injury and stated that "this all began after the birth of her first child" approximately nineteen years ago. (Id.). Plaintiff also denied any difficulty with her gait.  (Id.).  A lumbar spine x-ray showed loss of lordotic curvature, but intervertebral disc height seemed to be evenly maintained, and Plaintiff had normal range of motion on examination. (Id. at 239, 241).  Dr. Crenshaw prescribed a muscle relaxer for Plaintiff to use as needed for muscle spasm.  (Id. at 239).

On August 26, 2017, Plaintiff presented to Thomasina Anderson Sharpe, M.D. for a second consultative medical examination.  (Id. at 258-61).  Plaintiff's chief complaint to Dr. Sharpe was "sciatica," and she reported that "through the years her back would go out." (Id. at 259).  Dr. Sharpe noted that Plaintiff was in no acute distress, she got up and down the exam table with difficulty, and she took her shoes and socks off with difficulty.  (Id. at 260).  Plaintiff's gait had a right limp; no Romberg sign was present; toe gait, heel gait, and tandem gait were all difficult; and no assistive device was needed.  (Id.).  All joints appeared to be normal without tenderness or swelling and with normal range

of motion; muscle bulk was 5/5; strength and tone were intact; there was no atrophy; bilateral grip strength was 5/5; light touch was intact throughout all extremities; deep tendon reflexes were 2+ and equal; cranial nerves were intact; and pulses were 2+ and equal throughout.   (Id. at 260-61).   There was no spinal abnormality, spasm, tenderness, or swelling; straight leg raising was negative; and spinal range of motion was normal except for reduced range of motion in the lumbar spine.   (Id.).

On August 30, 2017, Howard C. Harper, Jr., M.D., the State agency medical reviewer, completed a disability assessment based on his review of the records then available.   (Id. at 55-61).   Dr. Harper essentially found that the record did not establish the existence of any severe impairments, and that Plaintiff was capable of work activities.   (Id. at 58-60).

Dr. Crenshaw's treatment records dated February 7, 2018 reflect that Plaintiff complained of lower back pain and pain radiating down her legs; denied numbness, tingling, or any gait abnormality; had normal range of motion on examination; and was currently taking Tramadol and Meloxicam, which helped.   (Id. at 274-75).   Dr. Crenshaw directed Plaintiff to continue her current medications and referred her for orthopedic evaluation.   (Id. at 273, 286).

On March 14, 2018, Plaintiff presented to Tim S. Revels, M.D. of Alabama Orthopaedic Clinic ("AOC") for an orthopedic spine

consultation.  (Id. at 286).  She reported lower back pain that
was ten out of ten in severity and did not radiate, and she denied
weakness or changes in sensation in her legs.  (Id.).  Dr. Revels
stated that radiographic images revealed degenerative disc disease
at L5-S1.  (Id.).  On examination, Plaintiff's muscle bulk was
grossly normal, her tone was normal, her pulses were 2+
bilaterally, her gait was smooth with no ataxia, and she was able
to stand without difficulty.  (Id. at 288-89).  An examination of
Plaintiff's lumbosacral spine revealed no swelling, deformities,
atrophy, or subluxations, and paraspinal muscle bulk and tone were
within normal limits, but Plaintiff had paraspinal muscle
tenderness and limited range of motion "due to
pain/spasm/stiffness."   (Id. at 289).   Plaintiff's lower
extremities were normal on examination, and her sitting and supine
straight leg raises were negative bilaterally.  (Id.).

Dr. Revels ordered a lumbar spine MRI, which was done on April
6, 2018.  (Id. at 284-85, 289).  The MRI revealed straightening
and lateral bending of the thoracolumbar curvature suspicious for
muscle spasm/strain; no abnormalities at levels T12-L1, L1-L2, and
L2-L3; facet joint fluid bilaterally at L3-L4; disc desiccation
with posterior broad-based disc bulge and left-sided facet joint
fluid at L4-L5 with no evidence for neural compression; and no
disc herniation or foraminal stenosis at L5-S1 despite bilateral
facet joint hypertrophy and fluid.  (Id. at 284-85).

13

Plaintiff was treated by Dr. Crenshaw a few days later, on April 10, 2018. (See id. at 269-71). The treatment notes reflect that Plaintiff's review of systems was negative for back pain, and she exhibited normal range of motion on examination. (Id. at 271). She was assessed with hyperlipidemia, tobacco use disorder, and essential hypertension. (Id. at 269).

Plaintiff returned to AOC for her MRI results two days later. (Id. at 281). On examination, Plaintiff had a positive straight leg raise test on the right, tenderness to palpation in her lumbar spine, and limited and painful lumbar range of motion in all planes tested. (Id. at 282). She had no deformities, subluxations, or muscle atrophy and had normal paraspinal muscle tone and strength; FABER, Gaenslen, and femoral stretch tests were negative bilaterally; and Waddell signs were not present. (Id.). Both lower extremities were normal on examination, with no tenderness, weakness, instability, or atrophy, and full range of motion in all planes. (Id.). A lumbar epidural steroid injection at L4-L5 was ordered, and Plaintiff was instructed to return to the clinic in two weeks for a post-injection follow-up. (Id. at 283).

However, Plaintiff did not return to AOC until October 11, 2018. (See id. at 291). On that date, she reported that her L4-L5 epidural steroid block on April 30, 2018 had given her ninety to 100 percent relief for about four months until the pain gradually returned. (Id.). Plaintiff's physical examination

results were unchanged from her April 12, 2018 visit. (See id. at 282, 293). Dr. Revels ordered a repeat lumbar epidural steroid injection and referred Plaintiff to AOC Pain Management for a consultation. (Id. at 293).

Plaintiff had a follow-up visit with Dr. Crenshaw on October 26, 2018. (Id. at 296). Dr. Crenshaw's progress notes did not document any reports of back pain, a review of systems was negative for arthralgias, weakness, or numbness, and Plaintiff had normal range of motion on examination. (See id. at 295-98). During a subsequent visit to Dr. Crenshaw on January 17, 2019, a review of Plaintiff's systems was again negative for musculoskeletal pain. (See id. at 304).

On January 29, 2019, Plaintiff presented to AOC Pain Management as a new patient. (Id. at 307). Plaintiff again reported great relief for four months from her April 2018 lumbar epidural steroid injection, but she stated that she had not had the repeat injection ordered by Dr. Revels in October 2018 due to the cost. (Id.). Plaintiff reported that she took Meloxicam daily to help with stiffness and Tramadol "once a day when she absolutely has to," and that both medications were helpful. (Id. at 307, 311). Although Plaintiff reported ten out of ten pain, it was specifically noted next to that report that Plaintiff displayed "no s/s of distress" and was "able to participate in exam, converse, and ambulate without difficulty." (Id. at 308). On

examination, Plaintiff displayed no focal neurologic signs, had normal motor and tone in all four extremities bilaterally, and ambulated with a normal gait pattern and no assistive devices. (Id. at 310). An examination of Plaintiff's lumbosacral spine revealed tenderness to palpation, hypersensitivity to touch, and questionable positive right-sided straight leg raise; however, Plaintiff had normal spinal curvature, no muscle spasms, normal bilateral lower extremity motor systems, 2+ and symmetrical lower extremity reflexes, normal muscle strength and tone, and full range of motion on all planes. (Id.). A repeat L4-L5 lumbar epidural steroid injection was again ordered and was performed on February 11, 2019. (See id. at 311, 315).

Plaintiff continued to report chronic lower back pain when she returned to AOC Pain Management on March 18, 2019, but she reported ninety percent relief from her February 2019 lumbar epidural steroid injection. (Id. at 312, 315). She also reported eighty percent improvement in pain symptoms with her current treatment plan, that her pain was controlled with her current medication, that Tramadol gave her a "boost" of energy, and that her pain was "stable." (Id. at 312). It was noted on examination that Plaintiff was in no acute distress, ambulated with a normal gait pattern with no assistive devices, exhibited no focal neurologic signs, and had normal motor and tone in all extremities bilaterally. (Id. at 314). Plaintiff requested a cane and lumbar

sacral orthosis "for [her] court date", neither of which were provided. (See id. at 315).

On May 9, 2019, Plaintiff presented to Eyston A. Hunte, M.D. for a consultative musculoskeletal examination.[5] (Id. at 316, 323-26). Plaintiff told Dr. Hunte that she had not had lasting results from epidural injections, and that Dr. Revels had suggested surgery on her back.[6] (Id. at 323). On examination, Dr. Hunte noted crepitus in the knees, normal strength and range of motion in the lower extremities, adequate strength and normal range of motion in the upper extremities, grip strength within normal limits, no sensory or motor deficits, and 2+ and equal deep tendon reflexes bilaterally. (Id. at 324-25). Plaintiff was erect but walked with an antalgic gait with short shuffling steps; she was able to squat only minimally because of back complaints; her toe and heel walking were normal; and she was able to get on and off of the exam table. (Id. at 325-26). Plaintiff did not have back spasms or scoliosis, but she did exhibit tenderness to palpation in the middle and lower lumbar area and decreased range of motion in the

_____

[5] At the end of Plaintiff's hearing on April 4, 2019, her attorney requested a post-hearing consultative orthopedic examination, and the ALJ granted the request and ordered the examination. (Doc. 11 at 53-54).

[6] The most recent records from AOC Pain Management reflect that Plaintiff was directed to follow up with Dr. Revels for a surgical consult as needed, but Dr. Revels' records do not reflect any recommendation for surgery. (See Doc. 11 at 293, 311, 315).

lumbar spine.  (Id. at 323, 325).

Based on his examination, Dr. Hunte completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), wherein he opined that Plaintiff could lift and/or carry up to ten pounds frequently and eleven to twenty pounds occasionally but could never lift or carry more than twenty pounds.  (Id. at 317). Dr. Hunte indicated that Plaintiff could sit for four hours, stand for one hour, and walk for one hour at one time without interruption; stand for a total of two hours, walk for a total of two hours, and sit for a total of four to six hours in an eight-hour workday; and may need a half an hour's rest every eight hours. (Id. at 318).  Dr. Hunte further opined that Plaintiff could occasionally push and pull, occasionally reach overhead with both upper extremities, and frequently handle, finger, feel, and reach in all other directions.  (Id. at 319).  Dr. Hunte also indicated that Plaintiff could operate foot controls only occasionally due to "back pain."  (Id.).  He opined that Plaintiff could never climb ladders or scaffolds, never crouch, and occasionally balance, stoop, kneel, crawl, and climb ramps and stairs.  (Id. at 320). Dr. Hunte opined that Plaintiff could tolerate only occasional exposure to moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, and extreme heat and cold, and could have no exposure to vibrations or unprotected heights.  (Id. at 321).

**VIII.** **Discussion**

    **1.** **Substantial evidence supports the ALJ's RFC assessment.**

Plaintiff first argues that the ALJ's determination that she has the RFC to perform the full range of medium work is not supported by substantial evidence.  (Doc. 12 at 2-6).  Plaintiff contends that the ALJ cherry-picked facts that would support his RFC assessment "but disregarded significant evidence in the file, particularly evidence of Plaintiff's orthopedic treatment that began in 2018."  (Id. at 6).  According to Plaintiff, the ALJ's RFC assessment is at odds with her treatment records and the opinions of her examining physicians.  (Id.).  Defendant counters that the RFC is supported by substantial evidence, and that the ALJ carefully considered all the evidence of record and clearly explained how the RFC assessment accommodated Plaintiff's credible work-related limitations.  (Doc. 13 at 7).  Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

Residual functional capacity is a measure of what a claimant can do despite her credible limitations.  See 20 C.F.R. § 404.1545.  Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite her impairments and must be supported by substantial evidence.  See Beech v. Apfel,

100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. §
404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.
1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, at *9-
10, 2012 WL 997222, at *3-4 (M.D. Ala. Mar. 23, 2012).  Once the
ALJ has determined the claimant's RFC, the claimant bears the
burden of demonstrating that the ALJ's decision is not supported
by substantial evidence.  See Flynn v. Heckler, 768 F.2d 1273,
1274 (11th Cir. 1985) (per curiam).  "To find that an ALJ's RFC
determination is supported by substantial evidence, it must be
shown that the ALJ has provide[d] a sufficient rationale to link
substantial record evidence to the legal conclusions reached."
Boone v. Berryhill, 2019 U.S. Dist. LEXIS 74764, at *14-15, 2019
WL 1983813, at *5 (S.D. Ala. May 3, 2019) (citations and internal
quotation marks omitted).  Having reviewed the record at length,
the Court finds that the ALJ has done so here.

As noted *supra*, while the ALJ initially found that Plaintiff
does not have any severe impairments, he found in the alternative
that Plaintiff's impairments are severe, and that they do not meet
or equal the severity of a listed impairment.  (Doc. 11 at 27-28).
The ALJ then found that Plaintiff has the RFC to perform the full
range of medium work.[7]  (Id. at 28).

---

[7] Medium work is defined as work that "involves lifting no more
than 50 pounds at a time with frequent lifting or carrying of
objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

The ALJ noted that Plaintiff's alleged disability was based primarily on a lower back impairment, that she had alleged arthritis and pain-related health problems, and that her medical records also indicated potentially significant hypertension and obesity. (Id. at 22, 29). In his discussion at step two, the ALJ reviewed Plaintiff's subjective allegations in detail, noting their particular focus on Plaintiff's abilities to lift, stand, walk, sit, and concentrate/remain on task. (Id. at 22-23). The ALJ recapped that discussion in his RFC assessment and interpreted

---

The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects . . . .

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) . . . In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Soc. Sec. Ruling 83-10, 1983 SSR LEXIS 30, at *15-16, 1983 WL 31251, at *6 (S.S.A. 1983).

Plaintiff's allegations to suggest that she was limited to a marginal range of part-time, sedentary tasks. (Id. at 29).

The ALJ also summarized the medical record evidence at step two and acknowledged that the file "contains support for medically determinable arthritis (including spine), hypertension, obesity, and pain syndrome impairments." (Id. at 23-24). For instance, the ALJ cited imaging-confirmed arthritis-related defects in Plaintiff's spine; abnormalities on clinical examination such as limping, limited range of motion, and partial straight leg raise positives; and related treatment including injection therapy and outpatient medication management. (Id.). The ALJ also noted Plaintiff's obesity and its potential to aggravate her other impairments by, for example, putting extra pressure on arthritic vertebrae or joints. (Id. at 23). The ALJ also recapped this discussion in his RFC assessment and stated that it provided some support for Plaintiff's allegations. (Id. at 29).

After reviewing Plaintiff's subjective allegations and the medical evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Id.). However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Id.). The ALJ stated that "the medical record in this case

is more consistent with long-term nonseverity than it is with the allegations," and that the same factors suggesting long-term non-severity were "also consistent with an RFC that would at least allow for medium exertion." (Id.).

In explaining this finding, the ALJ first pointed to Plaintiff's "conservative spine imaging study results" showing only "minimal, low-level, early-stage arthritic defects in the lower back," which he noted "are typical in virtually all adults" and do not usually cause symptoms until they reach more advanced stages. (Id. at 24, 29). Specifically, the ALJ cited Plaintiff's September 2015 lumbar spine x-ray showing "[n]o significant radiographic abnormality" and her April 2018 lumbar spine MRI showing mostly normal signs at most lumbar levels and no signs of fracture, herniation, or cord or root involvement. (Id.).

The ALJ next cited evidence that Plaintiff's symptoms improved significantly with treatment. (Id. at 29). Indeed, the record reflects that injections and medications were highly effective in alleviating Plaintiff's symptoms. For example, Plaintiff reported that her April 2018 lumbar epidural steroid block provided ninety to 100 percent relief for about four months, and that she had started feeling normal again before the pain gradually returned. (See id. at 291, 307). Plaintiff reported more than once that her Tramadol and Meloxicam were helpful. (See id. at 274, 307, 311). And, on her last date of treatment in March

23

2019, Plaintiff reported ninety percent relief from her most recent injection on February 11, 2019, approximately eighty percent improvement in pain symptoms with her current treatment plan, that her pain was controlled with her current medication with no side effects, and that her Tramadol gave her a "boost" of energy. (Id. at 312, 315).

The ALJ also cited "the nature and frequency of [Plaintiff's] silent/benign clinical evidence in areas like alertness, lack of acute distress, gross joints, range of motion (in all or most joints), gait, independent ambulation, strength, sensation, reflexes, dexterity, and muscle tone." (Id. at 29).[8] As the ALJ acknowledged, the record is "mixed" (see id. at 24) and contains a number of positive or abnormal physical examination findings and clinical observations. For example, Dr. Chromiak noted in 2015 that Plaintiff walked with a mild limp, was "wheeled in a borrowed wheelchair around the clinic due to being in exquisite pain", was unable to lie flat on her back, had reduced strength in both hip flexors, and was markedly tender on minimal palpation of her lumbar spine, gluteal muscles, and hips. (Id. at 231-32). Plaintiff's orthopedic treatment records and consultative examination reports

---

[8] Earlier in his decision, the ALJ had discussed the objective medical evidence and stated that "the nature and frequency of the benign/silent objective evidence supports a narrow distribution and a lesser degree of long-term problems than what was specifically alleged." (See Doc. 11 at 24-25).

typically note reduced range of motion in her lumbar spine, and those records also contain findings of lower back tenderness and some positive right-sided straight leg raises. (See id. at 232, 261, 282, 289, 310, 325). In addition, each of Plaintiff's consultative examiners noted an abnormal gait. (See id. at 232, 260, 325).

However, the ALJ pointed out that Plaintiff's abnormal clinical findings were outnumbered by the "normal or unremarkable" findings in the record. (See id. at 25). Notably, although Plaintiff walked with an abnormal gait at each of her consultative examinations, she denied difficulty with her gait to her treating medical providers, and those providers also noted no gait abnormalities on examination. (See id. at 240, 274, 289, 310, 314).[9] Plaintiff's primary care records consistently reflect normal range of motion, and her other records do not indicate reduced range of motion anywhere except for in her lumbar spine. (See id. at 232, 241, 245, 247, 250, 252, 260-61, 271, 275, 282, 288-89, 293, 298, 324-25). Even with respect to Plaintiff's lower back, the findings of reduced range of motion were not consistent. For example, it was noted during Plaintiff's January 2019

---

[9] The Court also notes that Plaintiff requested a cane "for [her] court date" at her last recorded visit to AOC Pain Management, despite the fact that she was able to ambulate "with a normal gait pattern with no assistive devices" on that date. (See Doc. 11 at 314-15).

evaluation at AOC Pain Management that Plaintiff had full lumbosacral spine range of motion in all planes, and there were no abnormal physical findings during her next pain management visit in March 2019. (See id. at 310, 314). Although the record reflects some positive or questionable positive right-sided straight leg raises and mentions of spasm, it also includes a number of negative bilateral straight leg raise tests and findings of no spasm. (See id. at 232, 260, 282, 289, 293, 310, 325). The record also overwhelmingly reflects findings of no acute distress; normal reflexes; normal sensation; no motor deficits; no focal neurologic deficits; normal muscle strength, tone, and bulk; no atrophy; intact grip strength and dexterity; normal joints; and no spinal abnormality, swelling, weakness, or instability. (See id. at 231-32, 254, 260-61, 265-66, 282, 288-89, 293, 310, 314, 323-25). Femoral stretch, Faber, and Gaenslen tests were uniformly negative bilaterally, and Waddell, Romberg, and Babinski signs were also absent. (Id. at 260, 282, 289, 293).

The ALJ also noted that the medical records show "little in the way of any regular and long-term treatment" and reasonably found that Plaintiff's "testimony about constant and 10/10 pain are not even remotely consistent with the minimal and conservative long-term treatment modalities in this case." (Id. at 30). Indeed, after Plaintiff's July 2015 emergency room visit, the record reflects *no treatment* for her back (or any other

musculoskeletal issue) for more than two years, even though
Plaintiff had five primary care visits within that span. (See id.
at 242-55). After Plaintiff first complained of back pain to Dr.
Crenshaw in August 2017, she was treated conservatively with
medication only - which she reported to be helpful - until her
first lumbar epidural steroid injection at the end of April 2018.
(See id. at 239-41, 259, 265, 269, 273-74, 277, 281, 286, 291).
Despite being instructed in April 2018 to return to AOC in two
weeks for a post-injection follow-up, Plaintiff did not seek
orthopedic treatment again until October 2018, apparently because
the injection had afforded almost complete relief for
approximately four months. (See id. at 283, 291). Plaintiff did
not report back pain to Dr. Crenshaw during visits in October 2018
and January 2019. (See id. at 295-98, 303-06). And, when she
returned to AOC Pain Management more than a month after receiving
a repeat lumbar epidural steroid injection in February 2019,
Plaintiff reported ninety percent relief from that procedure and
stated that her pain was controlled with her current treatment
regimen. (Id. at 312).

    The ALJ also cited evidence of Plaintiff's activities and
abilities. He noted Plaintiff's initial testimony at her hearing
that she "can't lift over 100 pounds," although he acknowledged
that Plaintiff's allegations were inconsistent and that she later
testified she could only safely lift and carry five pounds across

27

her kitchen. (See id. at 23). The ALJ also cited the third-party function report completed by Plaintiff's mother, who lived with her. (Id. at 24). Although the ALJ noted that Plaintiff's mother endorsed many of Plaintiff's allegations, the function report also reflects that Plaintiff performed activities including transporting her husband to work; transporting her mother to the doctor; cleaning her house; making the bed; washing clothes; feeding and bathing the dog; preparing food or meals nearly every day; shopping; frequently attending church and church social events; and serving as a church deacon. (See id. at 24, 152-58).

Plaintiff's own function report also reflects that she could perform activities such as washing dishes; mopping floors; cleaning the bathroom; making the bed; feeding pets; caring for the other members of her household; attending church; visiting relatives; and walking a half mile at one time. (Id. at 160-65). Although Dr. Chromiak stated that Plaintiff was dependent in both ADLs and IADLs, Dr. Sharpe's report states that Plaintiff "manages all ADL's and IADL's." (See id. at 230, 233, 259). Dr. Hunte's report also states that Plaintiff is able to do her activities of daily living at home, although Plaintiff reported needing assistance getting in and out of the tub. (Id. at 326).

The court finds that the foregoing substantial evidence, including the unremarkable lumbar spine imaging results, the significant improvement with treatment, the long gaps in treatment

and relative dearth of consistent and long-term treatment for
musculoskeletal complaints, the nature and frequency of the benign
or unremarkable clinical evidence in the record, and evidence of
Plaintiff's activities and abilities, supports the ALJ's
determination that Plaintiff has the RFC to perform the full range
of medium work.   The ALJ linked his RFC determination to the
medical and other evidence of record and explained his reasoning
with ample clarity to permit the Court to conduct a meaningful
review.    Plaintiff's accusations of cherry-picking are
unwarranted, as it is clear that the ALJ did not disregard
significant evidence - such as evidence of Plaintiff's orthopedic
treatment - but rather considered all the evidence and reached a
conclusion that is reasonable, although different than the one
urged by Plaintiff.

    As part of her challenge to the ALJ's RFC determination,
Plaintiff takes issue with the ALJ's evaluation of the medical
opinion evidence.   In particular, Plaintiff indicates her
disagreement with the ALJ finding the opinions of Dr. Chromiak and
Dr. Hunte to be unpersuasive while finding the assessment of the
non-examining State agency medical reviewer, Dr. Harper, to be
generally persuasive.  However, Plaintiff does not directly allege
that the ALJ committed reversible error in his evaluation of the
medical opinion evidence, nor does she cite any of the regulations
or case law applicable to the evaluation of medical opinions and

findings.  (See Doc. 12 at 3-6).  Thus, to the extent Plaintiff's brief can be read to challenge whether the ALJ applied the correct legal standards in evaluating the medical opinion evidence or whether substantial evidence supports that evaluation, those challenges are waived for lack of development.  See Bookman v. Comm'r of Soc. Sec., 490 F. App'x 314, 317 n.2 (11th Cir. 2012) (per curiam) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.") (quoting Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1319 (11th Cir. 2012)); Sanchez v. Comm'r of Soc. Sec., 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (noting that because plaintiff did not explicitly challenge the weight given to the medical opinions by the ALJ, plaintiff had "effectively abandoned any challenge to these decisions").  In any event, the ALJ adequately explained his reasons for finding the opinions of Dr. Chromiak and Dr. Hunte inconsistent with the totality of the record, including the evidence of Plaintiff's conservative and irregular long-term treatment, the evidence of improvement with treatment, the nature and frequency of the relevant clinical signs, and even some of the subjective allegations.[10]  Accordingly, Plaintiff's challenge to

---

[10] Plaintiff also points out that the ALJ failed to reference her school records, which show that she was in special education classes, failed her exit exams, and received a Certificate of Education, and she implies that the ALJ's failure to cite her school records means there is not substantial evidence to support the finding that she can perform other jobs that exist in

the ALJ's RFC assessment must fail.[11]

---

significant numbers in the national economy. (Doc. 12 at 5). This contention is unavailing for a number of reasons. As an initial matter, Plaintiff did not allege disability based on any mental impairment either before or during her hearing, she can read and write, and the medical evidence of record suggests no noticeable cognitive deficit. (See Doc. 11 at 43-49, 142, 148, 151, 225-326). Moreover, the VE confirmed at the hearing that he had studied the evidence in Plaintiff's case (presumably including Plaintiff's education records), and the VE was asked to assume an individual with Plaintiff's "same educational level" prior to providing representative occupations in response to the ALJ's hypothetical question at step five. (See id. at 50, 52). Finally, even assuming _arguendo_ that there was some error at step five, the ALJ's findings at step five were alternative to the finding at step four that Plaintiff can perform her past relevant work (see id. at 31-32), which did not require consideration of Plaintiff's educational background. See Engram v. Colvin, 2013 WL 4442023, at *10 (M.D. Ala. Aug. 15, 2013) ("Because the ALJ's disability determination rested on her finding that Engram could return to past relevant work that he has previously performed despite his alleged educational deficit, and not on a finding that Engram could perform other available jobs in the economy, the ALJ was not required to consider Engram's educational background as a vocational factor.") (citing 20 C.F.R. § 404.1560(b)(3)).

[11] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, at *15, 2017 WL 4992021, at *5 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations', this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.") (internal citation omitted).

> 2. **The ALJ did not commit reversible error in violation of SSR 16-3p in finding that Plaintiff's spine impairment, degenerative joint disease, chronic pain syndrome, obesity, and hypertension were not severe impairments.**

Plaintiff's second assignment of error is that the ALJ "committed reversible error in violation of Social Security Ruling 16-3p in failing to find [that Plaintiff] suffered from any severe impairments." (Doc. 12 at 6). It is not entirely clear from Plaintiff's brief whether she is specifically challenging the ALJ's initial finding at step two that her medically determinable impairments were not severe, or whether she is more generally challenging the ALJ's evaluation of her symptoms under Social Security regulations in connection with that finding.

### A. Severe Impairments.

"Unless the claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). "Step two is a threshold inquiry," where a claimant's burden is mild and "only claims based on the most trivial impairments" may be rejected. Id. At step two, "the ALJ must determine whether the impairments, alone or in combination, 'significantly limit' the claimant's 'physical or mental ability to do basic work skills.'" Wind v. Barnhart, 133 F. App'x 684, 690 (11th Cir. 2005) (per curiam) (quoting Phillips v. Barnhart,

357 F.3d 1232, 1237 (11th Cir. 2004)).  "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  McDaniel, 800 F.2d at 1031.  However, a diagnosis alone is insufficient; instead, the claimant has the burden of showing the effect of the impairment on her ability to work.  Wind, 133 F. App'x at 690.

To the extent Plaintiff specifically challenges the ALJ's finding that she has no severe impairment or combination of impairments, the alleged error provides no basis for remand. "[T]he regulations state that the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability." Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam).  Here, even assuming arguendo that the ALJ erred in finding no severe impairments at step two,[12] that error is not fatal because the ALJ made an alternative step two finding that Plaintiff's medically determinable impairments are

---

[12] Defendant does not attempt to argue the merits of the ALJ's initial step two finding that Plaintiff does not have a severe impairment or combination of impairments.  Instead, Defendant posits that Plaintiff's argument is rendered irrelevant by the ALJ's alternative finding that Plaintiff's impairments are severe and subsequent completion of the sequential evaluation process based on that alternative finding.  (See Doc. 13 at 14-15).

severe and proceeded with the remaining steps of the sequential evaluation process based on that alternative finding. See Santos v. Soc. Sec. Admin., Comm'r, 731 F. App'x 848, 852 (11th Cir. 2018) (per curiam) ("An error is harmless if it does not affect the ALJ's ultimate decision.") (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)); cf. Ferguson v. Astrue, 2012 U.S. Dist. LEXIS 139135, at *25, 2012 WL 4738857, at *9 (N.D. Ala. Sept. 27, 2012) ("[B]ecause step two only acts as a filter to prevent non-severe impairments from disability consideration, the ALJ's finding of other severe impairments allowed him to continue to subsequent steps of the determination process and his failure to list headaches as severe does not constitute reversible error because, under the Social Security regulations, the ALJ at later steps considers the combined effect of *all* the claimant's impairments.") (emphasis in original). Plaintiff does not challenge the ALJ's alternative step two finding or his application of the later steps of the sequential evaluation process, except for her challenge to the ALJ's RFC assessment, which, as discussed previously, is supported by substantial evidence. In light of the ALJ's subsequent analysis of Plaintiff's impairments based on the alternative finding that Plaintiff's medically determinable impairments are severe, any error in initially finding Plaintiff's impairments to be non-severe at step two was harmless.

**B.   SSR 16-3p.**

To the extent Plaintiff argues that the ALJ violated Social Security Ruling ("SSR") 16-3p, that argument is also unavailing. SSR 16-3p "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ." Soc. Sec. Ruling 16-3p, 82 Fed. Reg. 49462-03, 49462 (Oct. 25, 2017). SSR 16-3p rescinded a previous Social Security ruling that provided guidance on how to evaluate a claimant's statements about subjective symptoms such as pain. Id. at 49463.

The new ruling eliminates the use of the term "credibility" from the sub-regulatory policy and stresses that adjudicators "will not assess an individual's overall character or truthfulness" but instead will "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . ." Id. at 49463, 49467. "Whether before or after SSR 16-3p, an ALJ may choose to discredit a claimant's testimony about his or her symptoms." Ring v. Berryhill, 241 F. Supp. 3d 1235, 1252 (N.D. Ala. 2017), aff'd sub nom. Ring v. Soc. Sec. Admin., Comm'r, 728 F. App'x 966 (11th Cir. 2018) (per curiam).

When evaluating a claimant's symptoms, a two-step process must be used. Contreras-Zambrano v. Soc. Sec. Admin., Comm'r, 724 F. App'x 700, 703 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463). At step one, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 82 Fed. Reg. 49462-03 at 49463-64.

At step two, the ALJ must evaluate the intensity and persistence of the symptoms and determine the extent to which they limit the claimant's ability to perform work-related activities. Id. at 49464-66. In doing so, the ALJ must examine the entire case record, including the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. Id. at 49464. The ALJ also must consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms other than treatment; and (7) any other factors concerning the claimant's functional limitations

and restrictions due to her pain or symptoms.[13]   Id. at 49465-66;

see 20 C.F.R. § 404.1529(c)(3).[14]

The ALJ then must examine the claimant's statements about the

intensity, persistence, and limiting effects of symptoms in

---

[13] The ALJ is required to discuss only "the factors pertinent to the evidence of record."   SSR 16-3p, 82 Fed. Reg. 49462-03 at 49466.

[14] In Holt v. Sullivan, 921 F.2d 1221 (11th Cir. 1991), the Eleventh Circuit "articulated the 'pain standard,' which applies when a disability claimant attempts to establish a disability through h[er] own testimony of pain or other subjective symptoms."   Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'"   Id. (quoting Holt, 921 F.2d at 1223).   If the ALJ discredits a claimant's subjective testimony, he "must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding.   Strickland v. Comm'r of Soc. Sec., 516 F. App'x 829, 832 (11th Cir. 2013) (per curiam) (citing Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).   Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true.   Holt, 921 F.2d at 1223.   When the ALJ's reasons for discrediting a claimant's statements about pain or other symptoms are clearly articulated and supported by substantial evidence in the record, a reviewing court will not disturb the ALJ's findings.   Foote, 67 F.3d at 1562.

"SSR 16-3p provides clarification of the subjective pain standard; it does not substantively change the standard" or "the factors that an ALJ should consider when examining subjective pain testimony."   Harris v. Berryhill, 2017 U.S. Dist. LEXIS 155064, at *6 n.2, 2017 WL 4222611, at *3 n.2 (N.D. Ala. Sept. 22, 2017) (internal citation omitted); see also Griffin v. Berryhill, 2017 U.S. Dist. LEXIS 46384, at *18 n.10, 2017 WL 1164889, at *6 n.10 (N.D. Ala. March 29, 2017) ("The Eleventh Circuit's pain standard is consistent with the parameters that SSR 16-3p sets forth.").

relation to all other evidence and consider whether they are consistent with the record as a whole.  Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1308 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 81 Fed. Reg. 14166, 14170 (Mar. 16, 2016))[15]; see also 20 C.F.R. § 404.1529(c)(4).

Plaintiff does not allege that the ALJ did not follow this process, but she appears to assert that the ALJ violated SSR 16-3p by failing to "discuss the factors pertinent to the evidence of record." (See Doc. 12 at 9).  Yet, Plaintiff does not explicitly identify any factor set forth in 20 C.F.R. § 404.1529(c) or SSR 16-3p that the ALJ failed to discuss.  Instead, she points to certain evidence that she contends the ALJ did not address or that she believes supports her position that her impairments are severe. (See id. at 8-9).

Specifically, Plaintiff argues that the ALJ "failed to address" certain objective findings from her April 2018 lumbar spine MRI, including straightening and lateral bending of the thoracolumbar curvature suspicious for muscle spasm/strain, disc desiccation and disc bulge at L4-L5, and facet joint hypertrophy with and without fluid.  (Id. at 8).  This argument is meritless.

---

[15] The October 25, 2017 version of SSR 16-3p superseded the March 16, 2016 version "only in order to address the applicable date of the ruling and its retroactivity.  The versions are materially the same in all other respects."  Page v. Berryhill, 2019 U.S. Dist. LEXIS 81055, at 35 n.8, 2019 WL 2108127, at *12 n.8 (N.D. Fla. May 14, 2019) (internal citation omitted).

As an initial matter, SSR 16-3p "requires the [ALJ] to evaluate an individual's symptoms considering all the evidence in the record; but there is no requirement that the ALJ refer to *every* piece of evidence, so long as the opinion utilizes enough analysis to satisfy a reviewing court that the ALJ gave all of the relevant evidence before him its due regard." Lopez v. Berryhill, 2019 U.S. Dist. LEXIS 54116, at *23-24, 2019 WL 1429632, at *8 (S.D. Fla. Mar. 29, 2019) (emphasis in original). Furthermore, the ALJ *did* address this evidence, reasonably construing Plaintiff's MRI report to reflect "low-level, early-stage arthritic defects in the lower back" and noting that there were "no signs of fracture, herniation, or cord or root involvement, as well as normal signs at most lumbar levels." (See Doc. 11 at 24).

Plaintiff also lists other evidence that she contends supports her position, including Dr. Revels' diagnosis of intervertebral disc disorder with radiculopathy of the lumbar and lumbosacral regions, her referral to pain management and repeat lumbar epidural steroid injection, the "only 4 months relief" provided by her first lumbar epidural injection, and her three consultative examinations spanning from 2015 to 2019. (Doc. 12 at 8). However, Plaintiff does not contend that the ALJ failed to address this evidence. Indeed, although the ALJ did not specifically mention every portion of this evidence, it is clear from the ALJ's overall discussion and citations that he considered

*all* of the medical evidence of record.  (See Doc. 11 at 23–30).
The ALJ even reasonably found some of the evidence cited by
Plaintiff (namely, the substantial relief from the first
injection) to be inconsistent with Plaintiff's subjective
allegations.  (See id. at 25, 30).  In any event, Plaintiff "must
do more than point to evidence in the record that supports her
position; she must show the absence of substantial evidence
supporting the ALJ's conclusion." Sims v. Comm'r of Soc. Sec.,
706 F. App'x 595, 604 (11th Cir. 2017) (per curiam).  Plaintiff
has failed to carry her burden, and she has also failed to identify
any factor relevant to assessing the intensity, persistence, and
limiting effects of her symptoms that the ALJ did not address.
Accordingly, Plaintiff has failed to show that the ALJ's evaluation
of her symptoms violated SSR 16–3p.

## IX.  Conclusion

For the reasons set forth herein, and upon careful
consideration of the administrative record and memoranda of the
parties, it is hereby **ORDERED** that the decision of the Commissioner
of Social Security denying Plaintiff's claim for a period of
disability and disability insurance benefits be **AFFIRMED**.

**DONE** this **31st** day of **March, 2022.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE